Reading and Southwestern Street Railway Company *v.* Reading Street Railway Company, Appellant.

Argued April 12, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

Frank M. Hunter, with him John W. Speicher and John W. Speicher, Jr., for appellant.

Paul H. Rhoads, with him Thomas Iaeger Snyder, Snyder, Balmer & Kershner and Rhoads & Sinon, for appellee.

OPINION BY MR. JUSTICE LINN, May 23, 1949:

The defendant appeals from the dismissal of its petition under the Act of March 5, 1925, P. L. 23, 12 PS 672, challenging the jurisdiction of the court. The case was heard on plaintiff's bill, defendant's petition and plaintiff's answer to the petition. The Act applies "only where a 'question of jurisdiction over the defendant or of the cause of action for which suit is brought' is preliminarily raised . . . the statute was not 'intended to furnish a short cut to a determination of the issues of law or fact raised by the pleadings, however certain their determination may appear to be' . . ." *Rutherford Water Co. v. Harrisburg,* 297 Pa. 33, 36, 146 A. 113 (1929). Many of the cases on the subject are cited in *Matthews v. Plum Twp.,* 152 Pa. Superior Ct. 544, 547, 33 A. 2d 38 (1943), and in *Bell Telephone Co. of Penna. v. Phila. Warwick Co.,* 355 Pa. 637, 641 et seq., 50 A. 2d 684 (1947) ; *Upholsterers' International Union of North America v. United Furniture Workers, C. I. O. et al.,* 356 Pa. 469, 52 A. 2d 217 (1947) ; *Zlotziver v. Zlotziver,* 359 Pa. 84, 58 A. 2d 334 (1948).

Plaintiff averred that while operating a street railway in Reading, Pennsylvania and to the village of

Mohnsville, now the Borough of Mohnton, on August 1, 1901, it leased to defendant's assignor its street railway system "together with all the branches, extension, power-house, engines, machinery, et cetera, also all cars, rolling stock, and such like personal property, et cetera, and also all the rights, powers, franchises, and privileges, et cetera, for the full term of nine hundred ninety-nine (999) years, . . ."; that subsequently defendant acquired motor buses and operated them in Reading and vicinity in Berks County and to Adamstown, Lancaster County, and to Lebanon in Lebanon County; that the route to Adamstown "closely" paralleled the plaintiff's route to Mohnton. Paragraphs 9 and 10 of the bill alleged, "9. Among the covenants made in the aforesaid lease agreement was and is one whereby the lessee agrees that the cars, rolling stock, and other such articles demised under the said lease agreement shall be kept in good condition and repair, and if destroyed or worn out shall be replaced from time to time by other cars or articles equal in value to the appraised value of the original, and that written notice of said destruction, wearing out, and substitution, and a written description of the substituted article shall be given promptly to the lessor.

"10. The aforesaid lease agreement was subject to an indebtedness of the Plaintiff in the sum of $100,000.00; and among the covenants made in the aforesaid lease agreement was and is one whereby it is provided that the lessee shall and will provide for the renewal, extension, or payment of said principal indebtedness, represented by the bonds and mortgage specified in the lease agreement, when and as such principal indebtedness shall from time to time become due, and shall indemnify and save harmless the Plaintiff, against and from all payments, liabilities, tariffs, damages, and expenses in the premises." . The bill also avers that defendant has applied to the Public Utilities Commission for certifi-

cates authorizing the transfer by defendant to a proposed corporation to be known as Reading Bus Company, all its property used in its bus service in its Reading Division, and to Hershey Coach Company "an affiliated corporation," property used in its Lebanon County bus service. Plaintiff averred in paragraph 15 that "[it] has reasons to believe, believes and hence expects to prove that the entire transaction constituting the effort to incorporate the Reading Bus Co. and the Hershey Coach Co. with attendant transfer of assets thereto, is for the illegal purpose of evading the performance by the plaintiff of its lease with defendant" and "16. If the aforesaid plan of Defendant to transfer properties and rights to Reading Bus Company is carried out, the latter will then exercise its motor bus rights so as to give local service between Mohnton and Reading in direct competition with the aforesaid street railway service; and thus Defendant will, through its wholly owned subsidiary, injure and decrease the revenue from the said street railway in violation of its express covenant to use every reasonable effort to maintain and increase the business and revenue therefrom."

It is unnecessary to recite numerous other averments contained in the bill, the general purpose of which will be understood by what has been quoted and by reference to the relief asked. Plaintiff prays that defendant be restrained from "carrying out the aforesaid illegal plan of transferring its cash, motor bus properties and rights"; from "establishing a competing service between the City of Reading and the Borough of Mohnton which would contravene the aforesaid lease"; and "That an affirmative order may be issued against the Defendant requiring it to account in full for all retirements and substitutions therefor of Plaintiff's cars, rolling stock, and other articles demised under the aforesaid lease agreement and to submit to Plaintiff a complete in-

ventory of all of its properties now possessed by Defendant under said agreement."

Certainly, a court of equity has jurisdiction of the subject matter. It was considered by the Court and was clearly stated by Mr. Justice JONES in *Upholsterers' International Union of North America v. United Furniture Workers of America, C.I.O.*, 356 Pa. 469, 52 A. 2d 217 (1947) at page 473, "Accepting as true the averments of the bill of complaint, as we necessarily must for the purposes of the present limited inquiry, we think it is clear that the court has jurisdiction of the cause of action pleaded in the complaint. Therein the plaintiff avers valid and subsisting contracts which the corporate defendants have breached and are threatening to breach and which other of the defendants, including the defendant union, have induced and continue to induce the corporate defendants to breach and third persons to violate. Without more, it is settled for this State that a court of equity has jurisdiction of such a complaint: *Sun Ship Employees Association, Inc., v. Industrial Union of Marine and Shipbuilding Workers of America, Local No. 2, C. I. O.*, 351 Pa. 84, 40 A. 2d 413. The instant case is clearly one of a general class over which a court of equity has jurisdiction, i. e., wrongful breaches of valid and subsisting contracts whose value lies in the maintenance of the relationships which they establish and for whose breach money damages would not afford adequate compensation."

The record shows that the bill was served by the sheriff and that defendant appeared by counsel. The two facts (1) that the subject matter is within the cognizance of the common pleas and (2) that defendant appeared, satisfy the inquiry to be made in considering the Act of March 5, 1925. What the decision ultimately may be is not before us now and, on these pleadings, could not be forecast. The bill will not be dismissed merely because it may be that on some of the issues suggested, the Public

Utility Commission has exclusive jurisdiction. An unseemly clash of jurisdiction is not to be anticipated; on the contrary, the two tribunals will act harmoniously, each within the limits prescribed for its action.

The order appealed from is affirmed; costs to abide the event.